UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:   Alisha A. Russell,

                Debtor.

Case No. 13-30256
Chapter 7

Mary Lannon Fangio, Trustee,

                Plaintiff,

v.

Alisha A. Russell,

                Defendant.

Adv. Proc. No. 13-50016

Appearances:

Mary Lannon Fangio, Esq.
Whitelaw & Fangio
Attorneys for Plaintiff
247-259 W. Fayette Street
Syracuse, NY 13202

Robert H. Fix, Esq.
The Fix Law Firm
Attorneys for Defendant
157 West Bridge Street
P.O. Box 336
Oswego, NY 13126-0336

Hon. Margaret Cangilos-Ruiz, U.S. Bankruptcy Judge

## MEMORANDUM-DECISION AND ORDER

In her complaint, Mary Lannon Fangio, Trustee ("Trustee"), objects to the discharge of Alisha A. Russell ("Debtor") pursuant to 11 U.S.C. §§ 727(a)(2)(A) and (B), (a)(3), (a)(4) and (a)(5),[1] and requests judgment in an amount not less than $7,500. Issue was joined upon the filing of Debtor's answer in general denial. The court conducted a trial on February 7, 2014. In addition to the evidence adduced at trial, the court takes judicial notice of the filings made in the underlying bankruptcy case. For the reasons which follow, the court sustains the Trustee's objections, denies Debtor a discharge, and awards judgment in the amount of $7,143.75.

---

[1] 11 U.S.C. §§ 101-1532 (hereinafter, "Code" or "Bankruptcy Code").

1

*Jurisdiction*

The court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and §§ 157(b)(2)(E) and (J). This memorandum-decision and order incorporates the court's findings of fact and conclusions of law as permitted by Fed. R. Bankr. P. 7052.

*Background Facts*

Debtor filed a voluntary petition on February 22, 2013. At that time, Debtor was represented by Craig C. Humpleby, Esq. The petition and schedules are dated February 12, 2013, the same day that Debtor retained Mr. Humpleby. Exs. A, K. On schedule B, Debtor indicated that she had $100 in cash and $8,000 on deposit with Empower Federal Credit Union ("Empower") and was owed a tax refund of approximately $2,800 from New York State, all of which she claimed as exempt on schedule C. Debtor scheduled no real property and no non-exempt personal property. Debtor did not list any secured or priority creditors. Schedule F lists ten creditors, whose claims total $16,874.91. Ex. A at 21-30.

In the statement of financial affairs, sworn to on February 12, 2013, Debtor listed Wells Fargo Auto Finance as the only creditor to whom she had made payments in the prior 90 days (Question #3). She also averred that she had not made any transfers of money or property within the two years immediately prior to filing (Question #10) and was not holding property on another's behalf (Question #14). Ex. A at 36-39.

The first meeting of creditors was held on March 22, 2013 (the "March Meeting"). At the Trustee's request, Debtor produced bank statements for her accounts at Empower for the 90-day period immediately preceding the filing. Exs. B–E (the "Bank Statements"). Contrary to schedule B, the Bank Statements indicate that Debtor had $8,601.37 on deposit as of the date of

the petition.[2] Significantly and contrary to the averment in the statement of financial affairs, the Bank Statements reveal that on January 30, 2013, Debtor had transferred $7,143.75 from her Empower savings account to an account that Debtor later identified as belonging to her daughter (the "January Transfer"). The Bank Statements also reveal that sizeable "Mixed Coin" deposits had been made approximately every 2 weeks (the "Mixed Coin Deposits"). Exs. B–E.

At the March Meeting, Debtor testified that she had used the funds from the January Transfer to pay back rent, unpaid utility bills and amounts owed for child care expenses. Ex. F at 4-7. Noting that this testimony contradicted the statement of financial affairs, the Trustee told the Debtor that she would need to account for the funds. Ex. F at 7-8. The Trustee explained that, taken together, the January Transfer and the Debtor's tax refunds were "more than you're allowed for a[ cash] exemption by law." Ex. F at 6. Debtor acknowledged the conflict between her testimony and the disclosures in the statement of financial affairs. Ex. F at 7-8. The Trustee adjourned the meeting for Debtor to account for her use of the funds from the January Transfer. Ex. F at 9. Sometime after the March Meeting, Debtor turned over several receipts and documents to account for her claimed use of the funds from the January Transfer. Ex. G.

The Trustee reconvened the meeting of creditors on May 10, 2013 (the "May Meeting). There, Debtor testified that the January Transfer was directed into her daughter's account. Ex. H at 3-4. The funds, which belonged to Debtor, were "from five years of saving up." Ex. H at 3. As to the several receipts and documents that she had provided the Trustee, Debtor testified that the expenses were paid using her tax refunds. Debtor explained that she used her annual tax refunds, when necessary, to pay debts that accumulated in the later part of the year. Ex. H at 4. The funds from the January Transfer were still in her daughter's account. Ex. H at 5. Debtor

---

[2] Debtor's federal tax refund in the amount of $8,244, received via electronic funds transfer, was credited to her checking account that day. Ex. E.

3

"didn't realize" that she would need to disclose the transfer and denied trying to hide the January Transfer from the Trustee. Ex. H at 4, 8.

Debtor also testified at the May Meeting that she had permitted a friend, who owned a coin-operated washer and dryer business, to make the Mixed Coin Deposits. The friend, whom Debtor identified as Stacy Allen, did not have a bank account. Debtor would withdraw funds whenever Ms. Allen needed money. Debtor did not maintain an account book on Ms. Allen's behalf, but stated that Ms. Allen kept records. Debtor indicated the Ms. Allen could provide the Trustee with copies of the records. Ex. H at 5-7.

Near the end of the May Meeting, the Trustee again explained that Debtor was "way over" the allowed cash exemption. The Trustee expressed frustration with the lack of clarity in Debtor's testimony, particularly given that the testimony contradicted the disclosures in the schedules and statement of financial affairs. Ex. H at 7-9. The Trustee again adjourned the meeting to provide Debtor an opportunity to explain her financial transactions. Ex. H at 9.

Shortly after the May Meeting, Mr. Fix was substituted as Debtor's counsel. Ex. I.[3] By letter dated July 17, 2013, Mr. Fix informed the Trustee that Debtor had provided "rational explanations as to her financial transactions." Ex. J. The Trustee responded, asking that Mr. Fix provide the explanations and that Debtor turn over the funds from the January Transfer. Ex. J.

The Trustee received no further explanation and no funds were turned over, prompting the filing of the present complaint.

*Testimony at Trial*

The Debtor was the first witness to testify. She acknowledged that schedule B did not accurately reflect her Empower account balances as of the filing. Debtor admitted that—

---

[3] Although the consent to substitution of counsel was not filed on the docket until June 28, 2013, Debtor and Mr. Fix signed the document on May 20, 2013. *See* Case No. 13-30256, Doc. No. 16.

contrary to the averments in the statement of financial affairs—she had transferred, shortly before filing, $7,143.75 into her daughter's account, which Debtor stated was used to manage expenses related to her daughter's care and not as a future savings account. She also admitted holding property on another's behalf with respect to the Mixed Coin Deposits and that she had failed to disclose payments to her landlord and child care provider made shortly before the filing. Further, Debtor admitted that the transactions evidenced by the receipts and documents submitted to the Trustee were not related to the January Transfer but instead involved payments made with her tax refunds. Despite the Trustee's requests, Debtor failed to provide satisfactory documentation for the questioned financial transactions.

At trial, Debtor maintained that the Mixed Coin Deposits related to a coin-operated washer and dryer business. She testified, however, that the deposits were made not by Ms. Allen but by Ricky Torres, the father of Debtor's daughter. Debtor gave Mr. Torres access to her accounts because he did not maintain his own bank accounts on account of several outstanding judgments, including judgments for child support arrears. Notwithstanding the Trustee's request, Debtor admitted that she had failed to turn over records related to the washer and dryer operation. As to the change in her testimony, Debtor stated that she had been "nervous" and "wasn't thinking" and, therefore, could not explain her situation accurately when initially questioned by the Trustee.

Debtor denied any intent to conceal assets from the Trustee. She claimed that she had made the January Transfer under the belief that she could protect certain assets while in bankruptcy. According to Debtor, Mr. Humpleby had advised her that she could protect up to $7,500 in her accounts. Debtor testified that Mr. Humpleby did not ask to see the Bank Statements prior to filing, nor did he speak to Debtor between the March and May Meetings.

In light of Debtor's testimony regarding her communications with and advice given by Mr. Humpleby, the Trustee asserted that Debtor had waived the attorney client privilege. The court agreed. Without objection, the Trustee then called Mr. Humpleby as a witness to rebut Debtor's testimony.

Mr. Humpleby testified that he met with Debtor on February 12, 2013. He spent approximately an hour with the Debtor, personally assisting her in the completion of her petition, schedules and statement of financial affairs. Near the outset of their discussion, Debtor executed a retainer agreement, in which she acknowledged, inter alia, that the failure to provide full financial disclosure could result in the denial of discharge or dismissal of the case. Ex. K. Mr. Humpleby filed Debtor's petition under exigent circumstances. He stated that Debtor was facing an imminent wage garnishment and was "very concerned" that her wages not be garnished.

Mr. Humpleby obtained the information in the schedules and statement of financial affairs primarily from his interview of Debtor. Mr. Humpleby testified that, as is his custom, he inquired into each of the items on the schedules and statement of financial affairs. During such client interviews, Mr. Humpleby stated that he relies upon his clients' honesty. According to Mr. Humpleby, despite his inquiries, Debtor did not disclose that she had made any property transfers, was holding property for another or had made recent payments to creditors.

Mr. Humpleby testified that he had advised Debtor of the limits of the available exemptions, including the cash exemption. In discussing Debtor's forthcoming tax refunds, he advised, inter alia, that Debtor should not use those funds to pay relatives. He told Debtor that were she to use the tax refunds to pay a debt over $600, she must disclose the payment on her statement of financial affairs. Notwithstanding this discussion of payments to family members, Debtor failed to disclose the January Transfer. Had the transfer been disclosed, Mr. Humpleby

6

stated it would have changed the manner in which the case was filed. He testified that he advised Debtor multiple times, as evidenced by the acknowledgments in the retainer agreement, that the failure to disclose all her financial information could have severe consequences.

Mr. Humpleby learned of the January Transfer at the March Meeting. After the March Meeting, to satisfy the Trustee's requests, Debtor was asked to provide additional bank statements and receipts regarding her use of the funds from the January Transfer. Debtor provided several receipts and documents, which Mr. Humpleby forwarded to the Trustee. Debtor also began providing "all sorts of different stories" regarding her use of the funds, none of which made sense to Mr. Humpleby. According to Mr. Humpleby, Debtor's ever-changing stories caused him to "lose confidence in anything that was being told to him."

## DISCUSSION

The privilege of a discharge and the promise of a fresh start for the "honest but unfortunate debtor" is one of the central tenets underlying bankruptcy. *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991)). Where a party objects to a debtor's discharge, the court must construe section 727(a) "strictly against those who object . . . and liberally in favor of the [debtor]." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477, 479 (2d Cir. 2011) (quoting *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1310 (2d Cir. 1996)). The objecting party must prove the elements of the asserted § 727(a) cause of action by a preponderance of the evidence. Fed. R. Bankr. P. 4005.

The Trustee asserts causes of actions under §§ 727(a)(2)(A) and (B), (a)(3), (a)(4) and (a)(5). The Trustee need succeed under only one of these provisions for the discharge to be denied. Nevertheless, the court addresses each in turn.

*Section 727(a)(2) – Fraudulent Transfer / Concealment of Assets*

The Trustee argues that Debtor should be denied her discharge because, within a year of her filing, Debtor transferred funds from her personal savings account to her daughter's account with the intent to hinder, delay or defraud her creditors. Further, after the case was commenced, Debtor refused to turn over the transferred funds.

Pursuant to § 727(a)(2), a debtor may be denied a discharge if the debtor transferred, destroyed or concealed property with the intent to hinder, delay or defraud creditors. Section 727(a)(2)(A) focuses upon the debtor's prepetition conduct, barring a discharge if the debtor fraudulently transferred, destroyed or concealed property within one year prior to filing. Section 727(a)(2)(B) denies a discharge to a debtor who fraudulently transfers, destroys or conceals property of the estate after the filing of the petition.

Establishing a claim under section 727(a)(2) "requires a showing of actual intent to hinder, delay or defraud; a showing of constructive intent is insufficient." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 426 B.R. 52, 66 (E.D.N.Y. 2010), *aff'd*, 408 F. App'x 477. As it is rare for a debtor to freely admit the intent to defraud creditors, the party objecting to discharge generally must rely upon circumstantial evidence or inferences drawn from a debtor's conduct. *See Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). Often, the determination regarding the debtor's intent will turn on the court's assessment of the debtor's credibility.

The Trustee has demonstrated that Debtor transferred property within one year of the filing and continued to conceal that property, which was property of the estate, after the filing of the petition. Debtor admits that on January 30, 2013, twenty-three days before filing, she transferred $7,143.75 from her personal savings account to the account in her daughter's name.

8

Debtor also admits that that she did not disclose the transfer upon filing and acknowledges that the Trustee learned of the transfer when Debtor produced the Bank Statements at the March Meeting. At first, Debtor testified that she had used the funds from the January Transfer to pay certain prepetition debts, but later admitted that the funds used to pay those debts were her tax refund. Debtor has not turned over the funds from the January Transfer despite the Trustee's several requests that Debtor account for the funds.

To sustain the Trustee's objection, the court must find, in addition to the above, that the Debtor had the intent to hinder, delay or defraud her creditors. In making this determination, the court must consider the Debtor's "whole pattern of conduct." *Structured Asset Servs., L.L.C. v. Self (In re Self)*, 325 B.R. 224, 239 (Bankr. N.D. Ill 2005). Courts frequently look to certain "badges of fraud," which include "(1) the lack or inadequacy of consideration; (2) [a] family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suit by creditors; and (6) the general chronology of the events and transactions under inquiry." *Kaiser*, 722 F.2d at 1582-83; *see also James v. Tipler (In re Tipler)*, 360 B.R. 333, 341-42 (Bankr. N.D. Fla. 2005); *Self*, 325 B.R. at 239-40.

From the evidence adduced by the Trustee, the court finds that the Debtor had the requisite fraudulent intent. Nearly all of the "badges of fraud" exist. The transfer was gratuitous and deposited into an account, over which the Debtor admitted she had dominion and control. The transfer virtually depleted Debtor's savings, removing from the estate Debtor's only non-exempt asset. Contrary to her initial claims, the funds were not necessary to pay accrued

9

expenses. To account for the funds from the January Transfer, Debtor attempted to mislead the Trustee by providing receipts for expenses paid with her tax refund. Thereafter, Debtor failed to account for the funds. Further, Debtor failed to accomplish the minimal task of amending her schedules and statement of financial affairs to conform to her testimony at the 341 meetings. In sum, the court finds that Debtor's pattern of conduct strongly suggests that she had an improper intent.

Debtor denies having any illicit intent; however, the court finds that Debtor's testimony lacks credibility. Debtor asserts that she believed that she could protect up to $7,500 based upon Mr. Humpleby's advice. Debtor's assertion—advanced for the first time at the evidentiary hearing—is belied by the evidence. At the outset, Debtor made the January Transfer approximately two weeks before her consultation with Mr. Humpleby. Moreover, Mr. Humpleby flatly denies giving any such advice and the court finds his testimony regarding his interview with the Debtor to be credible. Further, Debtor indicated that she understood the Trustee's directive that she could not retain both the funds from the January Transfer and the tax refunds as together they exceeded the allowed cash exemption. Finally, even though Debtor retained new counsel, she still failed to amend her schedules or statement of financial affairs, or to turn over the funds from the January Transfer.

The court sustains the Trustee's objections under §§ 727(a)(2)(A) and (B).

*Section 727(a)(3) – Failure to Maintain Books and Records*

The Trustee argues that Debtor should be denied a discharge because she concealed, falsified or failed to preserve records regarding her financial condition. Specifically, the Trustee asserts that Debtor (1) did not spend the January Transfer as she testified and presented false receipts and statements to explain the transfer, (2) failed to satisfactorily explain or to produce

books and records regarding the Mixed Coin Deposits, and (3) failed to avail herself of several opportunities to correct the record and turnover the estate's property.

Debtors must make an honest, good faith presentation of their financial affairs in order to earn the privilege of a discharge. *Cacioli*, 463 F.3d at 234 (citing *In re Underhill*, 82 F.2d 258, 260 (2d Cir. 1936)). Section 727(a)(3) provides that the court may deny a discharge where the debtor "has failed to keep or preserve any recorded information . . . from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." *Peterson v. Scott (In re Scott)*, 172 F.3d 959, 969 (7th Cir. 1999) (internal quotation omitted). The party objecting to discharge bears the initial burden to demonstrate that the debtor failed to keep and preserve records from which the debtor's financial condition may be determined. If the objecting party satisfies its burden, the burden shifts to the debtor to explain that the failure was justified. *See Cacioli*, 463 F.3d at 235. "[W]hether a debtor's failure to keep books is justified is 'a question in each instance of reasonableness in the particular circumstances.'" *Id.* (quoting *Underhill*, 82 F.2d at 259-60).

The Trustee established that Debtor failed to provide records that would enable the Trustee to ascertain her financial condition. Debtor admitted to testifying falsely at the March Meeting regarding her use of the January Transfer. She admitted that the expenses for which she produced receipts and documents to account for the January Transfer were paid using her tax refund.[4] Debtor also admits that she testified falsely about the identity of the depositor of the Mixed Coin Deposits and, despite the Trustee's request, failed to produce supporting business records. Although provided several opportunities to do so, Debtor acknowledges that she failed to amend her schedules or statement of financial affairs, or to provide the Trustee with adequate

---

[4] The proffered documents are insufficient to document, must less explain, the claimed expenses. For example, Debtor provided an unsigned, typewritten note purportedly from her child care provider, stating that Debtor paid $1,050 in cash on February 11, 2013 for previously rendered child care services. Ex. G.

11

explanation and documentation for the questioned financial transactions.

Where, as here, the Trustee has shown that the records produced by the debtor are insufficient to ascertain the debtor's financial condition, "the burden shifts to the Debtor to produce 'additional credible evidence to rebut the proof of insufficient records, or to justify the absence of records.' " *Pereira v. Young (In re Young)*, 346 B.R. 597, 608 (Bankr. E.D.N.Y. 2006) (quoting *Thaler v. Erdheim (In re Erdheim)*, 197 B.R. 23, 29 (Bankr. E.D.N.Y. 1996)). Debtor has provided no such credible evidence, nor justifiable explanation. Thus, the court finds that Debtor has failed to sustain her burden to justify the failure to maintain adequate records.

The Trustee has proven her cause of action under § 727(a)(3).

*Section 727(a)(4) – False Oath or Statement*

The Trustee argues that Debtor should be denied her discharge because Debtor knowingly and fraudulently made false oaths and statements in her schedules, statement of financial affairs, and in her testimony at the 341 meetings regarding the January Transfer.

A debtor who knowingly and fraudulently makes a false oath or account may be denied a discharge under section 727(a)(4)(A). The party objecting to the discharge must establish five elements: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with intent to deceive; and (5) the statement related materially to the bankruptcy case." *Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 59 (E.D.N.Y. 2010) (internal quotation omitted). Deliberate omissions from a debtor's schedules or statement of financial affairs may represent false oaths or accounts that warrant the denial of the debtor's discharge. *See Tipler*, 360 B.R. at 349-50; *Self*, 325 B.R. at 245-47.

There can be no dispute that the Trustee has proven the first, second and fifth elements. The Trustee challenges Debtor's statements and omissions regarding the January Transfer in the

12

schedules, in the statement of financial affairs and at the 341 meetings, all of which are statements under oath for purposes of section 727(a)(4)(A). Debtor does not dispute that the challenged statements are false and because the statements and omissions concern the discovery of assets and the disposition of debtor's property, they are materially related to the bankruptcy case. *See Tipler*, 360 B.R. at 350; *Self*, 325 B.R. at 249.

The Trustee will prevail, therefore, provided that she also established that the Debtor made the statements and omissions with knowledge that they were false and with the intent to defraud creditors. "The knowledge requirement is satisfied by showing that 'the bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false.'" *Moreo*, 437 B.R. at 62 (quoting *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958)). Once the party objecting to discharge has proven the omission or false statement, the debtor must come forward with evidence to show that "the omission was the result of an honest mistake or to otherwise provide a credible explanation for the false statement." *Estate of Bishop v. Mulholland (In re Mulholland)*, Adv. Proc. No. 10-1154 J, 2011 WL 4352293, at 5 (Bankr. D.N.M. Sept 16, 2011).

As under § 727(a)(2), direct evidence of a debtor's fraudulent intent is rarely available. Thus, the debtor's intent to defraud creditors must usually be inferred from circumstantial evidence or by inference derived from the debtor's course of conduct. *See Tipler*, 360 B.R. at 350; *Self*, 325 B.R. at 248. The requisite intent may also be inferred "from a series of incorrect statements and omissions contained in the schedules." *Moreo*, 437 B.R. at 62 (citing *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 576 (E.D.N.Y. 2000)).

The court finds that Debtor made the statements and omissions in her schedules and statement of financial affairs knowing they were false. Debtor admitted that each of the challenged statements is false or inaccurate and acknowledges that, notwithstanding the

Trustee's focusing of Debtor's attention on the inaccuracies and omissions, she failed to amend her schedules or statement of financial affairs. Debtor has not argued that the several omissions were inadvertent or the result of an honest mistake, and the court finds that her proffered explanations are neither credible nor sufficient to excuse the falsehoods and omissions.

For the same reasons discussed above, the court finds that Debtor intended to defraud her creditors. Debtor admitted that she failed to disclose the January Transfer and the court finds her testimony that she relied upon Mr. Humpleby's advice not credible. Debtor produced receipts and documents to explain her use of the funds from the January Transfer that, ultimately, proved false. Debtor also admitted at trial to several other falsehoods and omissions. *Cf. Moreo*, 437 B.R. at 64 (finding that the court's determination of debtors' fraudulent intent bolstered by debtors' other fraudulent conduct). The court's conclusion is bolstered by Mr. Humpleby's testimony that Debtor provided him ever-changing and self-serving accounts regarding the transactions at issue.

Debtor has offered little in the way of explanation for her misstatements and omissions and no explanation for her failure to correct those errors. Given Debtor's failure to correct the record, even after retaining new counsel, the court cannot conclude that Debtor's misstatements and omissions were the result of honest mistakes or good faith reliance on the advice of counsel.

The court finds that the Trustee has proven her cause of action under § 727(a)(4)(A).

*Section 727(a)(5) – Failure to Explain the Loss or Deficiency of Assets*

The Trustee argues that Debtor should be denied her discharge due to her failure to satisfactorily explain the deficiency of estate assets, namely the January Transfer.

Section 727(a)(5) is meant "to deter those [debtors] who attempt to abuse the bankruptcy process by obfuscating the true nature of [their] affairs, and then refusing to provide a credible

explanation." *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 317 (Bankr. S.D.N.Y. 1994) (internal quotation omitted). To sustain an objection under § 727(a)(5), an objecting party must first demonstrate a loss, shortage, or deficiency of estate assets. If the objecting party makes this initial showing, the debtor is given the opportunity to provide a satisfactory explanation. Debtor's explanation need not necessarily be meritorious, but "it must be a good faith explanation of what really happened to the assets in question." *Self*, 325 B.R. at 250; *see Doubet, LLC v. Palermo(In re Palermo)*, 370 B.R. 599, 613 (Bankr. S.D.N.Y. 2007) ("[D]ebtor must offer 'much more in the way of explanation than vague generalities'" (quoting *In re Sperling*, 72 F.2d 259, 261 (2d Cir. 1934))).

The Trustee demonstrated that by making the January Transfer, the Debtor deprived the estate of a valuable non-exempt asset. Prior to trial, Debtor provided no explanation for the transfer. Moreover, Debtor attempted to mislead the Trustee regarding the January Transfer by providing false receipts and documents. At trial, Debtor sought to explain the January Transfer by asserting that she relied upon the advice of Mr. Humpleby. As discussed above, the court rejects this assertion and finds that it is not offered in good faith.

The Trustee has proven her cause of action under § 727(a)(5).

In addition to the denial of discharge, the Trustee seeks judgment to recover the funds comprising the January Transfer. The evidence established that shortly before the filing, Debtor transferred $7,143.75 from her personal saving account into her daughter's account, thereby placing the funds out of the Trustee's reach. Debtor has not asserted that the funds are exempt or otherwise are not property of the estate. By failing to turn over the funds, Debtor has failed in her obligations under §§ 521(a)(3) and (4). Accordingly, the court finds that the Trustee may recover judgment on behalf of the estate in the amount of $7,143.75.

## **CONCLUSION**

For the foregoing reasons, the court finds that the Debtor's discharge be denied pursuant to §§ 727(a)(2)(A) and (B), (a)(3), (a)(4) and (a)(5) and that the Debtor is liable to the Trustee in the amount of $7,143.75. A separate judgment will be entered in accordance with Fed. R. Bankr. P. 9021.

Dated: March 26, 2014
Syracuse, New York

_____
Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge